STATE OF WEST VIRGINIA

*In re* **K.C., G.C., and K.P.**

**No. 18-1111** (Hampshire County 18-JA-04, 18-JA-05, and 18-JA-06)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother H.C., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hampshire County's August 30, 2018, order terminating her parental rights to the children.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joyce E. Stewart, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding clear and convincing evidence that she abused and neglected the children and in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 19, 2018, the DHHR filed an abuse and neglect petition alleging that petitioner's boyfriend, C.S., sexually abused K.C. The DHHR further alleged petitioner refused to believe K.C.'s disclosures that she was sexually abused by C.S. and failed to protect the children from sexual abuse. Additionally, the DHHR alleged that petitioner abused substances and engaged in domestic violence with C.S. in the children's presence.

On February 12, 2018, the circuit court held an adjudicatory hearing during which petitioner stipulated to some, but not all, of the allegations of abuse and neglect. Petitioner admitted that there was substance use and domestic violence in the home and that she failed to

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

protect the children. Petitioner also admitted that K.C. had been sexually abused by her previous stepfather, T.C. However, petitioner made no admission that K.C. had been sexually abused by C.S. Over the course of two hearings, the circuit court heard evidence in support of the DHHR's allegations including a video recording of K.C.'s forensic interview, during which she disclosed that C.S. sexually abused her thirteen to fourteen times between August of 2017 and December of 2017.[2] Heather Carr, a DHHR investigative worker, testified that she substantiated the sexual abuse based on K.C.'s forensic interview during which the child disclosed that C.S. fondled her both over and under her clothes and put his fingers inside of her vagina on one occasion. Additionally, Ms. Carr testified that the forensic interviewer found the child's disclosures to be credible. Lastly, Ms. Carr testified that when she spoke to petitioner about the child's disclosures, petitioner became "incredibly angry" and called her daughter a liar. Petitioner also suggested to Ms. Carr that K.C. and G.C. be sent to live with relatives so that she and C.S. could raise their child, K.P., together as a family.

Trooper Jeremy Carson also investigated K.C.'s allegations against C.S. and found the allegations to be credible. Trooper Carson testified that many of the child's disclosures regarding substance abuse and domestic violence were corroborated by evidence found when executing a search warrant at the home. Trooper Carson further testified that C.S. voluntarily submitted to an interview and initially denied sexually abusing K.C., but eventually admitted that it was possible that his hand may have accidentally slipped into K.C.'s vaginal area while he was tickling the child. Finally, Trooper Carson testified that based on his investigation, he charged C.S. criminally with sexual assault; sexual abuse; and sexual abuse by a parent, guardian, or custodian.

Petitioner testified that she did not believe K.C.'s allegations of sexual abuse by C.S. She defended C.S. and stated that he and K.C. were never alone and hypothesized that K.C. fabricated the allegations so that she could spend more time with petitioner or live with her grandmother and switch schools. Petitioner also explained that she and C.S. no longer lived together, but if not for the conditions of his criminal bond and the pendency of the abuse and neglect proceeding, they would still be living together.

On May 17, 2018, the circuit court issued the order adjudicating petitioner as an abusing parent. The circuit court found that petitioner exposed the children to substance abuse and domestic violence in the home and failed to protect K.C. from sexual abuse by C.S. The circuit court also found that K.C.'s disclosures regarding the sexual abuse were credible and corroborated by other evidence. The circuit court further found that petitioner minimized the domestic violence and substance abuse in the home and their effects on the children. Finally, the circuit court found that petitioner clearly intended to continue her relationship with C.S. despite the fact that he was adjudicated for sexually abusing her child.

On July 23, 2018, the circuit court held a dispositional hearing and petitioner moved for a post-adjudicatory improvement period. The DHHR and guardian both moved for the termination of petitioner's parental rights. A DHHR caseworker recommended that petitioner's parental

---

[2]The child also made detailed disclosures regarding domestic violence and substance abuse in the home.

rights be terminated due to her denial of K.C.'s sexual abuse. The caseworker explained that petitioner's denial of the sexual abuse made the remediation of the issue impossible. Petitioner testified that she continued a relationship with C.S. and refused to believe that he abused K.C.

In its dispositional order, the circuit court found that K.C.'s forensic interview revealed "extremely and profoundly specific and detailed disclosures by said child regarding the sexual abuse perpetrated upon her" by C.S. and that the child's disclosures were credible. The circuit court noted petitioner's theories about why K.C. would fabricate allegations of sexual abuse. The circuit court found it "troubling and deeply concerning that this parent would assume that her child would readily fabricate allegations of sexual abuse especially in light of the evidence before this Court which [petitioner] has witnessed and observed first hand." In light of petitioner's failure to acknowledge the sexual abuse, the circuit court found that petitioner's "protective capacities are so severely compromised and/or non-existent at this juncture as to render any case plan, improvement period, etc. designed to remedy the conditions of abuse or neglect to be futile." Accordingly, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. The circuit court also denied petitioner's motions for a post-adjudicatory improvement period and post-termination visitation. Ultimately, the circuit court terminated petitioner's parental rights to the children in its August 30, 2018, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[3]K.C.'s father voluntarily relinquished his parental rights. The circuit court terminated the parental rights of G.C.'s father and K.P.'s father. According to respondents, the permanency plan for K.C. is to remain in residential treatment to address issues related to sexual abuse until placed in an adoptive home. The permanency plan for G.C. is adoption by his paternal grandparents and the permanency plan for K.P. is adoption by his paternal grandparents. Sibling visitation occurs at K.C.'s treatment center.
.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in finding clear and convincing evidence that she abused and neglected the children.[4] Petitioner suggests that K.C. was motivated to fabricate the allegations of sexual abuse. She contends that the evidence of abuse and neglect was "too speculative" to satisfy the clear and convincing evidentiary standard. We disagree. Based upon our review of the record, we find that the circuit court had sufficient evidence to adjudicate petitioner as an abusing parent.

We have held that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W. Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

Here, petitioner admitted to substance abuse and domestic violence in the home, although the circuit court found that she minimized those issues and their effects on the children. Further, the DHHR presented substantial evidence regarding C.S.'s sexual abuse of K.C. The child's forensic interview was admitted into evidence and showed that the child disclosed specific details regarding the sexual abuse. The circuit court noted that K.C.'s forensic interview revealed "extremely and profoundly specific and detailed disclosures by [the] child regarding the sexual abuse perpetrated upon her." The circuit court found that the child's disclosures of the sexual abuse by C.S. were credible and corroborated by other evidence. However, the record shows that petitioner refused to believe the child's disclosures and wished to continue a relationship with

---

[4]Petitioner also argues in support of this assignment of error that while C.S. was arrested and charged with sexually abusing K.C., the State failed to present his case to a grand jury for multiple terms. Petitioner fails to provide any legal authority or citation to the record in support of this argument in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure which provides that the "[b]rief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on." Further, the "argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." *Id*. Therefore, we decline to address this argument.

4

C.S., despite the evidence that he sexually abused K.C. Petitioner testified that she believed that K.C. fabricated the allegations and even suggested sending K.C. and G.C. to live with relatives so that she and C.S. could raise their child, K.P., together. Based on this evidence, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Petitioner asserts that the termination of her parental rights was "primarily and substantially centered upon her disbelief of K.C.'s accusations." Petitioner reiterates her argument that the circuit court lacked sufficient evidence to find that C.S. sexually abused K.C. However, as discussed above, the circuit court found the child's disclosures regarding the sexual abuse to be credible and determined that sufficient evidence was presented to find that C.S. sexually abused K.C. and petitioner abused and neglected the children.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have held that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Also, we have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Other than her self-serving testimony that she would comply with the terms and conditions of an improvement period if granted one, petitioner failed to present any other evidence to demonstrate that she would fully participate in an improvement period. As discussed above, petitioner failed to acknowledge that C.S. sexually abused K.C. and, even on appeal, contends that the child was motivated to fabricate the allegations of sexual abuse. Based upon her vehement denial of the sexual abuse, despite the evidence to corroborate the allegations, it is clear that granting petitioner a post-adjudicatory improvement period would have been futile. The circuit court specifically noted in its dispositional order that petitioner's "protective capacities are so severely compromised and/or non-existent at this juncture as to render any case plan, improvement period, etc. designed to remedy the conditions of abuse or neglect to be futile." Petitioner also minimized the substance abuse and domestic violence issues and their effects on the children. Therefore, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

The evidence discussed above also supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there

is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

*Id*. As discussed, petitioner refuses to acknowledge the issues of abuse and neglect and argues that K.C. fabricated the allegations of sexual abuse, despite evidence to corroborate the child's allegations. Petitioner also continued a relationship with C.S. throughout the proceedings, despite the circuit court's finding of sexual abuse. Due to her failure to acknowledge the sexual abuse, it is clear that there was no reasonable likelihood that petitioner could substantially correct the issues of abuse and neglect and that the termination of her parental rights was in the children's best interests.

Further, while she argues that the circuit court should have granted her a post-adjudicatory improvement period before terminating her parental rights, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the termination of petitioner's parental rights.

Lastly, because K.C. has not been placed in an adoptive home because of her participation in residential treatment, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

[t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 30, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

7